<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JANET CAPANNA, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06-5314 (JAG) |
| v. | : | |
| | : | **OPINION** |
| TRIBECA LENDING CORP., | : | |
| Defendant, | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion by defendant-counterclaimant Tribeca Lending Corp., ("Defendant" or "Tribeca") seeking the grant of summary judgment, pursuant to FED. R. CIV. P. 56(c), against Plaintiff-Counterclaim-Defendant, Janet Capanna ("Plaintiff"). For the reasons set forth below, this motion shall be granted, in part, and denied, in part.

### I. BACKGROUND

Plaintiff, Janet Capanna, is an individual residing at 100 Tansboro Road, Berlin, New Jersey. (Complaint at ¶ 1.) Tribeca was incorporated under the laws of the State of New York and its principal place of business is 6 Harrison Street, New York, NY 10013. (Defendant's Notice of Removal at ¶ 7.) Tribeca is a subsidiary of Franklin Credit Management Corporation. (Def. Rule 56.1 Statement ¶ 1.)

During Plaintiff's employment with Tribeca, it was engaged in the business of originating and underwriting wholesale subprime residential mortgage loans. (Id.) Plaintiff began her

employment with Tribeca in December 2004. (Id. at ¶ 2.) Plaintiff applied for, and was hired into, the position of account executive in Tribeca's Marlton, New Jersey branch. (Id.) Plaintiff, requested, and received, a transfer into the higher paying position of underwriter on her first day of work. (Id.)

     Before Plaintiff was hired, she submitted a written application for employment to Tribeca in November 2004. (Id. at ¶ 3.) The application form requested, among other things, accurate and complete full-time and part-time employment records. (Id.) In response to this request, Plaintiff cross-referenced the resume that she had submitted, along with the application form. (Id.) On Plaintiff's resume, she omitted two previous employers. (Id. at ¶ 4.) Specifically, Plaintiff omitted a position she held with First Franklin Financial Corp. ("First Franklin") in 1998, and another position she held with Collegiate Title Corporation in 2003-2004. (Id.) Plaintiff had been fired from both positions and had engaged in litigation with both employers. (Id.) After Plaintiff was fired from First Franklin, she sued the company alleging whistle-blower retaliation. (Id.) Plaintiff now admits that she filed a Conscientious Employee Protection Act claim, N.J. Stat. Ann. § 34:19-1 et seq. ("CEPA") as well as a New Jersey Law Against Discrimination ("NJLAD") claim against First Franklin. (Plaintiff's Rule 56.1 Statement at ¶ 6.) Plaintiff testified in her deposition that she intentionally omitted these employers from her resume because she believed that she was bound by confidentiality obligations. (Def. Rule 56.1 Statement at ¶ 7, Plaintiff's Rule 56.1 Statement at ¶ 4.)

     Apparently, there are other instances of incorrect statements in Plaintiff's pedigree information on the application form. For instance, Plaintiff stated on her resume that she attended mortgage seminars, including the Mel Funk Institute, but conceded at her deposition

that the Mel Funk Institute was actually a real estate course, from which she dropped out before completion. (Id. at ¶ 10.) Also, under the heading of "Education" on her resume, Plaintiff listed "Office Management," but later admitted at her deposition that she never had taken a course in office management. (Id. at ¶ 12.)

Plaintiff admits that the signature page of her Tribeca employment application contains a declaration in which Plaintiff acknowledges the truthfulness of her application and a warning that false, or incomplete, or misrepresented information of any kind, will be sufficient cause for the application to be rejected, or if discovered after employment begins, grounds for immediate termination. (Id. at ¶ 13.) Plaintiff concedes that under the terms of the declaration and employment application that Plaintiff signed, Tribeca had the right to terminate her employment, if it had discovered the falsehoods on her resume. (Id. at ¶ 14.)

Tribeca's Human Resources director, Ayoko Groves, stated in a declaration that the inaccuracies on Plaintiff's resume would have precluded her hire had Tribeca discovered them prior to her employment and would have warranted her immediate discharge had Tribeca discovered them during Plaintiff's employment. (Id. at ¶ 15, Groves Decl. at ¶¶ 2-3.) As Human Resources Director for Defendant, Ms. Groves possessed overall familiarity with the Human Resources policies applicable to Tribeca. (Def. Reply to Plaintiff's Response to Tribeca's Rule 56.1 Statement at ¶ 15, Groves Decl. at ¶¶ 1-3.) Tribeca did not discover the inaccuracies in Plaintiff's resume until after she began working as an underwriter for Tribeca in December 2004. (Def. Rule 56.1 Statement at ¶ 16.)

As an underwriter, Plaintiff was responsible for reviewing mortgage loan application files to verify that they were complete, to satisfy Tribeca's underwriting criteria, and to ensure that the

applications contained accurate information. (Id.) On her only formal performance review, Plaintiff received a total aggregate score of 72.7 out of 100–the low end of the "Good" scale. (Id. at ¶ 24.) During Plaintiff's employment, Tribeca rated employees on a scale of 1 to 100, with rating categories of "Outstanding" (90-100), "Very Good" (80-89), "Good" (70-79), "Improvement Needed" (60-69), and "Unsatisfactory" (below 60). (Id. at ¶ 23.) Plaintiff received rating scores of 65, or "Improvement Needed," in the categories of "Interpersonal Relationships" and "Judgment." (Id. at ¶ 25.) In the "comments" section of these categories, her managers noted "Confrontation with co-workers. Needs to be more approachable when confronted," and "Needs to handle self-control/professionalism when disagreements arise." (Id.) Plaintiff admits that she signed this review on January 23, 2006. (Id., Plaintiff's Rule 56.1 Statement at ¶ 27.)

In April 2006, Plaintiff was assigned to underwrite a loan application file (the "Taylor file") that would later form the basis for her CEPA claim in this lawsuit. (Def. Rule 56.1 Statement at ¶ 28.) Defendant states that the loan was a "stated loan", meaning that Tribeca would rely on the salary, as stated by the applicant, on the loan application file, subject to the account executive and underwriter's verification of the applicant's employment and the underwriter's "reasonability" test. (Id.) Plaintiff admits that she was initially assigned the Taylor file in April 2006, but contends that the loan was not originally presented as a "stated loan" but it became a stated loan when it was returned to her on May 2, 2006. (Plaintiff's Rule 56.1 Statement at ¶ 28.) Plaintiff undertook the initial underwriting review on April 4-5, 2006. (Id. at ¶ 29.) Plaintiff then returned this file to the account executive assigned to the loan file, Amy Loesche, to satisfy certain underwriting conditions before the loan application could be finalized.

4

(Id. at ¶ 30.)

According to Plaintiff's deposition testimony, the next time she worked on the Taylor file was on the afternoon of May 2, 2006. (Def. Rule 56.1 Statement at ¶ 32.) On that date, Plaintiff stated that she returned to her desk after 2:00 p.m. and saw the Taylor file in her in-box with a post-it-note from her supervisor, John Gagliardi, Underwriting Manager. (Def. Reply to Plaintiff's Response to Def. Rule 56.1 Statement at ¶ 32.) The post-it note stated, "Remove foster pay, Social Security, provided salary.com for RN." (Def. Rule 56.1 Statement at ¶ 33.) Plaintiff claims that she asked Mr. Gagliardi about the post-it note. (Id. at ¶ 34.) Mr. Gagliardi told her not to use social security income because it was not appropriate for the type of loan for which the applicant was being considered. (Id.) Plaintiff contends that Mr. Gagliardi told her that she should use the salary.com report for the job title of Registered Nurse for purposes of determining the loan applicant's salary using the reasonability test. (Id. at ¶ 35.) This was consistent with the information that the account executive, Amy Loesche, had obtained on April 19, 2006, when she called to verify verbally the borrower's employment. (Id. at ¶ 35.)

After speaking with Mr. Gagliardi on May 2, 2006, Plaintiff called the applicant's employer to re-verify the applicant's employment. (Id. at ¶ 36.) According to Plaintiff, the borrower's employer reported that the borrower was not a Certified or Registered Nurse, but was a Certified Nurse's Assistant. (Id.) When Plaintiff learned of the borrower's occupation, she asked a co-worker to obtain a salary.com report for the Certified Nurse's Assistant position, performed a reasonability analysis, and concluded that the borrower's salary was too low for her to qualify for the loan. (Id. at ¶ 37.) Plaintiff reported her findings to Mr. Gagliardi. (Id. at ¶ 38.) By Plaintiff's admission, neither Mr. Gagliardi nor any other manager asked Plaintiff to do

5

anything else regarding this file. (Id.)

According to Mr. Gagliardi, he took the file from Plaintiff and conducted a further re-verification of the borrower's employment, as was standard practice at Tribeca when a question arose as to whether a loan satisfied its underwriting guidelines. (Id. at ¶ 39.) Mr. Gagliardi confirmed that Plaintiff was correct and that the borrower was a Certified Nurse's Assistant and not a Registered or Certified Nurse. (Id.) Mr. Gagliardi reported this information to Tracey Lovuolo, the Branch Manager, and Donna TerBush, the Operations Manager. (Id. at ¶ 40.)

Based on this information, Tribeca declined the loan because it did not meet program requirements. (Id.) Mr. Gagliardi testified that it was not uncommon for underwriters, including Plaintiff, to bring underwriting concerns to his attention. (Id. at ¶ 41.) Ms. TerBush also testified that is was a common occurrence for underwriters to discover inaccuracies and potential fraud by loan applicants that would require Tribeca to decline the loans. (Id. at ¶ 42.) It was the underwriters's responsibility to detect these problems with the application to ensure that Tribeca was underwriting only quality loans. (Id.)

Prior to May 2, 2006, Ms. Loesche and another account executive, Kim Curnew, complained to Mr. Gagliardi that Plaintiff had apparently thrown away documents from the Taylor file, including prior loan payoff information and documents relating to association fees on the property. (Id. at ¶ 43.) Ms. Curnew took Mr. Gagliardi to Plaintiff's desk and showed him items she had retrieved from Plaintiff's waste basket. (Id.) Ms. Loesche and Ms. Curnew were both very upset and told Mr. Gagliardi that Plaintiff had thrown away documents from other loan files that they had been working on, and they wanted something done about it. (Id.)

Plaintiff testified that on April 29, 2006, Mr. Gagliardi spoke with her about loan

6

documents from the Taylor file being found in her trash. (Id. at ¶ 44.) Ms. Loesche also complained directly to Ms. TerBush about items from loan files found in Plaintiff's trash can in an e-mail to Ms. TerBush at 8:37 a.m. on the morning of May 2, 2006. (Id. at ¶ 45.) After receiving this e-mail, Ms. TerBush discussed the issue with Mr. Gagliardi, and Mr. Gagliardi confirmed that documents that were supposed to be part of an active loan file were indeed found in Plaintiff's trash can. (Id. at ¶ 46.)

Ms. TerBush directed Mr. Gagliardi to prepare a written warning memorandum to Plaintiff that morning. (Id. at ¶ 47.) Ms. TerBush also decided to address another performance issue involving Plaintiff–allowing loans to close with an expired appraisal. (Id.) Ms. TerBush directed Mr. Gagliardi to include this issue in the warning as well. (Id.) Mr. Gagliardi e-mailed the written warning memorandum to Ms. TerBush for her review and signature at 12:38 p.m. on May 2, 2006. (Id. at ¶ 48.) The memo was written before Plaintiff raised issues about the borrower's employment history after 2:00 p.m. on the afternoon of May 2, 2006. (Id.) In the memo, Plaintiff was cited for "unacceptable job performance of job duties by throwing away important loan documents and allowing a loan to close with expired mortgage documents." (Id. at ¶ 50.)

Plaintiff denied wrongdoing, but acknowledged at her deposition that the issues for which she was cited were serious and would have warranted criticism of her performance. (Id.)

In the afternoon of May 2, 2006 Plaintiff was called into a meeting, with Mr. Gagliardi and Ms. Lovuolo, and Ms. TerBush present via speaker phone, to address the issues in the warning memorandum and to receive the formal warning. (Id. at ¶ 51.) By the accounts of those present at the meeting, Plaintiff became confrontational after she was questioned about the

documents found in her waste basket. (Id. at ¶ 52.)  Plaintiff, for the first time, alleged loan fraud in this meeting. (Id. at ¶ 53.)   Ms. Terbush stated in her deposition that she did not realize until after the meeting that Plaintiff was referring to the Taylor file when she made allegations of loan fraud.  (Id.)  Plaintiff denies that she acted unprofessionally in this meeting but admits that she raised her voice in this meeting and told Ms. TerBush that there was nothing wrong with her performance.  (Id. at ¶ 54.)

Plaintiff walked out of the meeting, but before leaving the premises, she made a copy of the Taylor file. (Id.)  Plaintiff copied this file at Tribeca's expense, using Tribeca's copying machines, and took a copy of the file home with her. (Id. at ¶ 56.)  Plaintiff acknowledges that her removal of a copy of the Taylor file violated Tribeca's Confidentiality of Company Business policy, as set forth in the company handbook.  (Id. at ¶ 57.)

Plaintiff contends that immediately after the May 2, 2006 meeting, Mr. Gagliardi informed Plaintiff that she was fired. (Id. at ¶ 59.)   Mr. Gagliardi did not have authority to fire Plaintiff.  (Id.)  Ms. TerBush, the Operations Manager, considered terminating Plaintiff for her alleged insubordination during the meeting of May 2, 2006, but decided not to proceed with termination.  (Id. at ¶ 60.)  Plaintiff called Mr. Joseph Caiazzo, the President of Tribeca and left a voicemail message for him. (Id. at ¶ 61.)  When Mr. Caiazzo returned Plaintiff's call, Plaintiff expressed her concerns with the Taylor file. (Id. at ¶ 62.)  During this call, Mr. Caiazzo instructed Plaintiff to call Ms. TerBush the next morning.  (Id.)

Plaintiff did not return to work the next day, May 3, 2006, but instead called Ms. TerBush.  (Id. at ¶ 64.)  Ms. TerBush returned her call later that day and the two finally spoke on May 4, 2006. (Id.)   Plaintiff surreptitiously recorded the telephone conversation.  (Id.)  During

8

the call, Ms. TerBush informed Plaintiff that she and Mr. Caiazzo expected her to return to work, that she was not fired, and that Mr. Gagliardi did not have the authority to fire her. (Id.)

Plaintiff admitted at her deposition that she understood that Tribeca had requested that she return to work without conditions. (Id. at ¶ 65) Plaintiff understood that she would not be asked to approve the Taylor loan file. (Id.) Plaintiff decided not to return to work based on the advice of counsel. (Id.) Plaintiff continued to be paid through the week of May 5, 2006, and her official termination date was May 8, 2006, due to job abandonment. (Id. at ¶ 66.)

On or about October 6, 2006, Plaintiff commenced an action by filing a Complaint in the Superior Court of New Jersey, Law Division, Hudson County. Plaintiff alleges that her employment with Tribeca Lending was terminated in violation of CEPA. Plaintiff claims she suffered damages, including but not limited to lost past and future earnings, other employment benefits, and emotional injuries. Defendants removed the action to federal court based upon diversity jurisdiction. On November 26, 2006, Tribeca answered Plaintiff's Complaint and asserted Counterclaims against Plaintiff for conversion, trespass, and breach of the duty of loyalty arising out of Plaintiff's unauthorized removal of the Taylor file.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted).) Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set

10

forth specific facts showing that there is a genuine issue for trial"). "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006).

### III. ANALYSIS

A) **Plaintiff's CEPA Claim**

CEPA is a whistleblower statute that prohibits an employer from taking retaliatory action against an employee who discloses to a supervisor a practice of the employer that the employee believes to be proscribed by law or against the clear mandate of public policy, or objects to, or refuses to participate in, conduct proscribed by law or that is against the clear mandate of public policy. See N.J. Stat. Ann. § 34:19-3. Section 34:19-3 provides that, "An employer shall not take any retaliatory action against an employee because the employee does any of the following: a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law....(2) is fraudulent or criminal . . .or  c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:  1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . (2) is fraudulent or criminal . . . or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." Id.

In her Complaint, Plaintiff alleges that Tribeca violated CEPA when Plaintiff was fired after she made allegations of fraud concerning the Taylor file during the meeting of May 2, 2006.

11

"Ms. Capanna advised Ms. TerBush that there was fraud all over the file, that she was asked to change the applicant's job, and that she was not going to participate in fraud and Tribeca would be hearing from her attorney." (Complaint at ¶ 13.) Plaintiff also stated in her Complaint that, "Upon information and belief, Ms. Capanna was fired by Gagliardi and/or TerBush in retaliation for objecting to and/or refusing to participate or acquiesce in conduct that she reasonably believed was (a) in violation of law, or a rule or regulation promulgated pursuant to law; (b) fraudulent or criminal; or (c) incompatible with public policy." (Id. at ¶ 16.)

When analyzing a CEPA claim, a court must conduct a three step analysis. See Kolb v. Burns, 727 A.2d 525, 530-531 (N.J. Super. App. Div. 1999). "Where the plaintiff proceeds on a "pretext" theory...Plaintiff must first establish a prima facie case of discrimination. Once a prima facie case is established, the burden of persuasion is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action.  Upon such a showing by the employer, plaintiff has the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action taken by the employer.  As to this prong of the three-part test, plaintiff need not provide direct evidence that her employer acted for discriminatory reasons in order to survive summary judgment. "She need only point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons."  In other words, the plaintiff, as the nonmoving party, "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." Id. (citations omitted). See

also Blackburn v. UPS, Inc., 179 F.3d 81, 92 (3d Cir. 1999).

Plaintiff has failed to establish a prima facie case. In order to establish a prima facie case, under CEPA, a plaintiff must demonstrate, "(1) a reasonable belief that the employer's conduct was violating either a law, rule, regulation or public policy; (2) he or she performed a "whistle blowing" activity as described in N.J.S.A. 34:19-3a or c; (3) an adverse employment action was taken against him or her; and (4) a causal connection existed between his whistle-blowing activity and the adverse employment action." Klein, D.D.S., M.D. v. University of Medicine and Dentistry of New Jersey, 871 A.2d 681, 687 (N.J. Super. App. Div. 2005).

Plaintiff has failed to establish that she had a reasonable belief that Tribeca was engaging in, or about to engage in, fraud. As an underwriter, Plaintiff was responsible for detecting whether a loan application contained accurate information. Plaintiff stated that she was unaware that the applicant in the Taylor file did not hold the title of Certified or Registered Nurse, until after she re-verified the borrower's employment on the afternoon of May 2, 2006. Mr. Gagliardi had asked her to use the salary.com report for the RN position, prior to her discovery that the applicant was not a Registered Nurse. Plaintiff was merely performing her job duties as an underwriter when she re-verified the applicant's occupation and determined that the applicant was ineligible for the stated loan. (Def. Rule 56.1 Statement at ¶ 16.) Plaintiff has not demonstrated that she was asked to disregard this finding once she pointed it out to her supervisor, Mr. Gagliardi. When Plaintiff informed Mr. Gagliardi of the results of her re-verification of employment, Mr. Gagliardi did not ask her to approve the loan. Instead Mr. Gagliardi confirmed Plaintiff's finding and did not approve the loan. (Id. at ¶¶ 38-39.)

"CEPA does not merely require that the employee subjectively believe that certain

13

activities have taken or are about to take place.  In order for an employee's belief to be considered 'reasonable', that belief must be such that a 'reasonable lay person would conclude that illegal activity was going on' or at the very least, is imminent." Blackburn v. United Parcel Service, Inc., 3 F. Supp. 2d 504, 515 (D.N.J. 1998), aff'd., 179 F.3d 81 (3d Cir. 1999).  Plaintiff has alleged fraud against Tribeca but she has failed to buttress her claims with any evidence to suggest that illegal activity occurred or was imminent.

In addition, Plaintiff has failed to identify any illegal, or unethical or public policy violation sufficient to satisfy the first prong required to establish a prima facie case under CEPA.  "CEPA was enacted to prevent retaliatory action an employer against an employee who "blows the whistle on illegal or unethical activity committed by their employers or co-employers," not to assuage egos or settle internal disputes at the workplace as in the present case." Klein, D.D.S., M.D., 871 A.2d at 691.

Plaintiff fails to prove the second element required to establish a prima facie case under CEPA.  Plaintiff did not engage in any whistle-blowing activity.  Plaintiff neither disclosed to a supervisor, nor objected to any unlawful activity or conduct [by the company] that would violate the clear mandate of public policy.  See Id. at 687.  Plaintiff merely performed her routine duties, and re-verified the salary information and occupation of the applicant in the Taylor file.  Plaintiff disclosed to her supervisor that there had been an error in the file, which the supervisor corrected.  (Def. Rule 56.1 Statement at ¶¶ 38-39.)

Plaintiff also fails to satisfy the third prong required to establish a prima facie case under CEPA because she cannot demonstrate that she faced an adverse employment action.  Under CEPA, an adverse employment action is defined in part as "the discharge, suspension or

14

demotion of an employee." Hancock v. Borough of Oaklyn, 790 A.2d 186, 193 (N.J. Super. App. Div. 2002). Plaintiff claims that she was told on May 2, 2006 that she was discharged by Mr. Gagliardi after she reported fraud in the Taylor file and after she left the meeting during which her job performance was questioned. Plaintiff, however, cannot refute the evidence presented that she was not terminated.

The most damning evidence is a telephone conversation, taped surreptitiously by Plaintiff. Ms. TerBush informed Plaintiff that she had not been discharged from her job; that Mr. Gagliardi did not have authority to fire her; and that she was expected to return to work. (Def. Rule 56.1 Statement at ¶ 64.) These facts cannot support evidence of an adverse employment action. "Moreover, "'[r]etaliatory action' does not encompass action taken to effectuate the 'discharge, suspension or demotion'" but rather "speaks in terms of the completed action." Klein, D.D.S., M.D., 871 A.2d at 691.

Plaintiff cannot meet the fourth element required to establish a prima facie case under CEPA because she cannot prove any nexus between the adverse employment action alleged (discharge) and her alleged whistle blowing activity. See Id. at 687. Plaintiff was not terminated because she alleged fraud in the Taylor file, or even because she informed Mr. Gagliardi that the Taylor applicant was ineligible for the stated loan. Plaintiff was terminated because she decided, upon the advice of counsel, not to return to work. No indicia of a firing existed. (Def. Rule 56.1 Statement at ¶¶ 64-65.) Plaintiff was only terminated because she never returned to work and Tribeca interpreted (quite reasonably) that her failure to return should be considered abandonment of her job duties. (Id. at ¶ 65.)

This Court finds that Plaintiff has failed to establish a prima facie case under CEPA. In

the absence of any genuine issue as to a material fact bearing on the aforementioned elements required to establish a prima facie case under CEPA, summary judgment is granted in favor of Defendant as to Plaintiff's CEPA claim.

> **B)** **Defendant's Counterclaims for Conversion, Trespass, and Breach of Duty of Loyalty**

**I. Conversion**

"The gist of an action in trover is conversion, that is, the exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with such title. The rule is well expressed in Farrow v. Ocean County Trust Co., 121 N.J.L. 344, 2 A.2d 352, 354 (Sup. Ct. 1938) in the following language: 'There must be an actual conversion, or a refusal to deliver on demand, which is evidence of conversion, before the detention becomes unlawful. To constitute a conversion of goods there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel.'" Mueller v. Technical Devices Corp., 84 A.2d 620, 623 (N.J. 1951).

Defendant claims that Plaintiff committed an act of conversion when she copied the Taylor file, or portions thereof, before leaving work on May 2, 2006. (Def. Rule 56.1 Statement at ¶ 54.) This Court finds that Defendant has failed to establish a claim for conversion. By merely copying the Taylor file, Plaintiff did not repudiate Tribeca's right to the Taylor file. The facts reveal that Plaintiff only copied the file and left the original copy of the file behind. Plaintiff did not exercise dominion over the Taylor file, and she did not alter or destroy the quality of the file by copying it. "[T]he mere use of the property of another without permission

16

of the owner does not necessarily amount to conversion." LaPlace v. Briere, 962 A.2d 1139, 1145 (N.J. Super. App. Div. 2009). Further, Plaintiff did not seek to exploit Defendant's property in such a manner that its value diminished. Plaintiff's actions simply do not amount to conversion. Summary judgment is denied as to Defendant's counterclaim for conversion.

**II. Trespass**

"An action for trespass arises upon the unauthorized entry onto another's property, real or personal. State v. Wouters, 71 N.J. Super. 479, 485, 177 A.2d 299 (App. Div. 1962). "[A] trespass on property, whether real or personal, is actionable, irrespective of any appreciable injury." Pinkowski v. Township of Montclair, 691 A.2d 837, 843 (N.J. Super. App. Div. 1997).

Plaintiff acknowledged that her removal of a copy of the Taylor file violated Tribeca's Confidentiality of Company Business policy, as set forth in Tribeca's company handbook. (Def. Rule 56.1 Statement at ¶ 57.) Plaintiff disputes whether she was not authorized to take files home as she claims that the written policies, particularly those prohibiting the removal of documents from the premises, were often ignored. (Id.) Plaintiff stated in her deposition that supervisors allowed her to take work-related files home for the purpose of working at home. (Decl. of Rosemary Alito, Exh. A. (Capanna Dep.) at 249:15-250:6). It is evident that Plaintiff did not remove the Taylor file for the purposes of working from home. Plaintiff was not authorized to take a copy of the Taylor file home in order to prepare for potential litigation. There are no genuine issues of material fact as to whether Plaintiff removed a copy of the file and whether this act was unauthorized. Defendant is entitled to prevail on its counterclaim for trespass as a matter of law. Defendant's motion for summary judgment as to its counterclaim for trespass is granted.

### III. Duty of Loyalty

"The scope of the duty of loyalty that an employee owes to an employer may vary with the nature of their relationship. Employees occupying a position of trust and confidence, for example, owe a higher duty than those performing low-level tasks." Cameco, Inc. v. Gedicke, 724 A.2d 783, 789 (N.J.1999). "The contexts giving rise to claims of employee disloyalty are so varied that they preclude the mechanical application of abstract rules of law. In general, the adjudication of such claims summons rules of reason and fairness." Id.

"[A]n employer may prove a prima facie case of an employee's breach of the duty of loyalty not only by showing that the employee directly competed with the employer while employed, but also by showing that the employee while employed assisted the employer's competitor. In evaluating an employee's conduct under the breach of the duty of loyalty standard, the employee's level of trust and confidence, the existence of an anti-competition contractual provision, and the egregiousness of the conduct are important factors to consider in the analysis. Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1168 (N.J. 2001).

Defendant alleges that Plaintiff violated the common law duty of loyalty when she copied the Taylor file and removed the copy from the premises. Under New Jersey law, the common law duty of loyalty applies where an employee takes an action adverse to the employer's interest. The duty typically arises in instances where employees act in their own self-interest to compete with their employer by performing competitive acts or soliciting customers, or by divulging trade secrets or other confidential information for the purposes of competing with the employer. Id. at 1166 ("Importantly, however, information need not rise to the level of a trade secret to be protected. In Platinum Management, Inc. v. Dahms, 285 N.J. Super. 274, 295, 666 A.2d 1028

18

(Law Div. 1995), the court held that to be legally protected, the information need not constitute a trade secret, and indeed, may otherwise be publicly available.  The key to determining the misuse of information is the relationship of the parties at the time of disclosure and the intended use of the information").

Defendant has offered no evidence to suggest that Plaintiff competed directly with Tribeca or assisted a competitor of Tribeca.  At worst, Plaintiff copied the Taylor file to assist her in the litigation of her CEPA claim, in violation of an agreement with her employer.  This Court finds that Plaintiff's conduct may have violated the Confidentiality Agreement she signed with Tribeca, but her conduct does not evince the "egregiousness" required to make out a prima facie case for breach of the common law duty of loyalty.

Defendant's counterclaim against Plaintiff for the breach of the duty of loyalty fails, as a matter of law.  The motion seeking summary judgment is denied.

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment shall be granted, as to Plaintiff's CEPA claim and Defendant's counterclaim against Plaintiff for trespass, and denied as to Defendant's counterclaims for conversion and breach of the duty of loyalty.

 S/Joseph A. Greenaway, Jr.  
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date:  March 31, 2009